[Civ. No. 215. Fifth Dist. May 27, 1963.]

PASADENA PETROLEUM CORPORATION et al., Plaintiffs and Appellants, v. DANA HUGHES et al., Defendants and Respondents.

Richard Hosking for Plaintiffs and Appellants.

John M. Nairn for Defendants and Respondents.

CONLEY, P. J.—This is an appeal from a judgment for the defendants in an action which grew out of the assignment by defendants to the plaintiffs, Pasadena Petroleum Corporation and W. C. Handel, of a landowners' overriding oil and gas royalty. The other plaintiffs were in turn assignees of a portion of this overriding royalty. The plaintiffs sued on the theory that the defendants had wronged them by the recording of a notice of rescission as a preliminary to a suit for cancellation. The trial court found in favor of the defendants on all of the essential issues.

The initial facts leading up to the specific differences involved in the present litigation are conceded by both sides. Through the estate of George L. Moody, deceased, of which Harley Hughes was the executor, the respondents became owners of government lots Nos. 1, 2, 3 and 4 in section 10, Township 32 south, Range 26 east, MDB&M in Kern County and by virtue of their reservation of a landowners' overriding royalty in a lease executed in favor of the Superior Oil Company of California they were owners of an interest in the underlying mineral rights. The defendants initially believed that they were entitled to an overriding royalty of 5.35 per cent of all oil and gas produced from the leased property, but actually as the State of California had reserved a one-sixteenth interest in the minerals when patents were issued to defendants' predecessors in interest which, according to the lease was to be satisfied by defendants herein, they only had an interest of approximately 2.67 per cent. The Superior Oil Company lease, prepared by its own attorneys, provided that the lessors should pay the royalty interest of the State of California; but it had been the understanding of

defendants in the negotiations leading up to its execution that the royalty interest reserved by the state would be satisfied by all of the parties proportionately. The actual lease, approved by the probate court *In the Matter of the Estate of George L. Moody,* deceased, Kern County Probate No. 13610 on October 19, 1956, did provide that the State of California's share should be paid by the lessors. It is apparent from the record that the trial court's determination that defendants were acting in good faith throughout and that they were not aware of the effect of the provisions in question to reduce their interest in the overriding royalty from what they thought was 5.35 per cent to approximately 2.67 per cent is supported by substantial evidence.

On or about April 22, 1957, defendants agreed with Pasadena Petroleum Corporation and W. C. Handel to sell them one-half of what they thought their royalty interest was. The written assignment dated June 17, 1957, shows on its face that the parties assumed that the defendants ". . . own an undivided five and thirty-five one hundredths per cent (5-35/100%) landowners' royalty in and to the said property under said lease," and the assignment recited that the Hugheses: ". . . do hereby sell, transfer and assign to W. C. Handel and Pasadena Petroleum Corp. an overriding royalty under said lease of two and sixty-seven one hundredths percent (2-67/100%) of the one hundred percent (100%) of all the oil, gas and/or other hydrocarbon substances to be produced and saved or sold from the above described real property under said lease—that is to say, approximately one-half of the total five and thirty-five one hundredths percent (5-35/100%) landowners' royalty owned by the undersigned;

"To Have And To Hold during the term of the hereinbefore described lease; any modification, extensions or renewals thereof;"

Pasadena Petroleum Corporation and Mr. Handel paid to the defendants the sum of $4,250, and the document was duly recorded in Kern County on June 27, 1957.

Thereafter, the original assignees sold and assigned to Lawrence F. Lake and W. E. McFadden, plaintiffs herein, 1 per cent of 100 per cent of the "oil, gas, and/or other hydrocarbon substances produced by virtue of the leasehold" and received $4,325 therefor, and a one-fourth of 1 per cent of 100 per cent interest to Joseph M. Thomas for $1,000. Summarizing, with respect to the question of financial transactions, the plaintiffs herein paid to defendants $4,250 and re-

ceived in turn for only a partial assignment of their interest a total of $5,325.

Shortly before October 15, 1957, the defendants discovered the error with respect to the extent of their ownership and attempted to remedy it through negotiations with the interested parties. On or about October 21, 1957, defendants recorded a notice of rescission directed to W. C. Handel and Pasadena Petroleum Corporation which reads as follows: "You Are Hereby Notified that the undersigned, Harley Hughes and Dana Hughes, his wife, hereby rescind that certain Assignment of Overriding Royalty dated June 17, 1957, wherein said Harley Hughes and Dana Hughes were Assignors and W. C. Handel and Pasadena Petroleum Corporation were Assignees, covering a portion of Government Lots 1, 2, 3 and 4 of Section Ten (10) being that portion of Section Ten (10) lying South of the Swamp and Overflow Line in Township Thirty-Two South (T.32S.), Range Twenty-six East (R.26E), M.D.B.&M., County of Kern, State of California, and offer to restore the consideration received by said Harley Hughes and Dana Hughes.

"Said Assignment was recorded in Book 2808 of Official Records, at Page 317, Kern County Records.

Dated: October 15, 1957.

"[S] Harley Hughes
Harley Hughes
"[S] Dana Hughes
Dana Hughes"

Under date of December 31, 1957, the defendants filed an action against the Superior Oil Company and others, Kern County Superior Court No. 71519 entitled *Hughes et al.* v. *Superior Oil Company et al.*, in an attempt to reform the original lease to conform with understanding of the defendants as to what the Superior Oil Company had promised orally. A demurrer to the complaint was sustained without leave to amend, and an appeal was taken.

On the 9th day of April, 1958, defendants began an action entitled *Harley Hughes et al.* v. *W. C. Handel, Pasadena Petroleum Corp. et al.*, Kern County No. 72202, for the rescission of the assignment and recorded a *lis pendens* on or about April 14, 1958. However, the complaint was not served because of the pendency of the appeal in the Superior Oil Company suit.

In the latter part of October 1959, Superior Oil Company

quitclaimed its interest in the premises. In view of the delivery of the quitclaim deed the appeal in the case against Superior Oil Company for the reformation of the lease was dismissed by stipulation. As the royalty interest in contention was by its express terms to exist only for the duration of the Superior Oil Company lease, any further right with respect to future production of oil underlying the land was terminated. The case of *Hughes* v. *W. C. Handel and Pasadena Petroleum Corporation,* No. 72202, has never been tried and is still pending.

The complaint in the instant action is in three counts. The first count alleges the basic facts of the history of the transaction leading up through the notice of rescission. As above stated, these facts are readily conceded, and were stipulated to by both sides. The essential allegations of the first cause of action, in addition to the foregoing, are contained in paragraphs X and XI, reading as follows: "That on October 15, 1957, defendants caused to be prepared a Notice of Rescission relative to the assignment of interest to plaintiff corporation and W. C. Handel as described in paragraph VI herein; that said Notice of Rescission was recorded October 21, 1957, in Book 2858, page 69 of Kern County Records; that a copy of said Notice is affixed hereto, marked exhibit 'A' and made a part hereof as if set out at length in these premises.

"That said Notice of Rescission was drawn, executed, and recorded by defendants unlawfully and illegally and with malice; that said action on the part of defendants caused the royalty share interests of plaintiffs in and to said leasehold to become worthless; that plaintiffs could not re-sell said interests and their property therein was nullified as of record, all to their general damage."

As to the second cause of action, counsel for the appellants states in his opening brief: "Appellants concede there was insufficient evidence to sustain a finding in their favor on the second cause of action," so we shall not concern ourselves with that pleading.

The third cause of action is a common count alleging: "That within four years last past defendants have become indebted to these defendants [*sic*] in the sum of $10,750 for money had and received for the use and benefit of plaintiffs; that no part thereof has been paid, although demand therefor has been made."

The prayer relative to the first cause of action is that actual damages "apportionable by the court among the plaintiffs in

the aggregate sum of $50,000'' be awarded besides exemplary damages in the additional sum of $50,000. On the third cause of action judgment is asked against defendants in favor of the Pasadena Petroleum Corporation and W. C. Handel in the sum of $10,750.

The answer alleges that the notice of rescission and the subsequent suit constituted an attempt to remedy the situation caused by a mutual mistake of the parties in the sale of the overriding royalty. The answer denies that the defendants became indebted to plaintiffs or any of them.

Appellants make two contentions: (1) They claim that the respondents ''having committed an actionable abuse of process as a matter of law'' are liable in damages; and (2) they argue ''that the Court erred in not making a Decree of Restitution where Respondents made a unilateral rescission of an agreement for which consideration had been paid, there being no restoration of the consideration.''

It is somewhat difficult to comprehend exactly what the appellants' theory is in connection with their contention that respondents committed an actionable wrong as a matter of law —whether their claim should be categorized as ''abuse of process,'' or ''malicious prosecution.'' The first mentioned terminology is apparently applicable from the form of plaintiffs' pleading; there is no allegation in the complaint that a lawsuit followed the recording of the notice of rescission; it would seem probable, therefore, that the theory of appellants is that merely by the recordation of the notice of rescission the defendants committed an ''abuse of process'' and that they immediately became liable to the plaintiffs as a matter of law. However, the opening brief of appellants seems to indicate by some of its language that they are relying in whole or in part on a theory that the defendants were guilty of ''malicious prosecution.''

If their theory is purely one of ''abuse of process,'' the appellants could not hope to recover because of the holding in *Albertson* v. *Raboff*, 46 Cal.2d 375 [295 P.2d 405], that publication in good faith of an essential document in a lawsuit cannot constitute abuse of process, because it is privileged. While the *Albertson* case involved the recordation of a notice of *lis pendens* and the complaint here deals with a notice of rescission, the rationale of the *Albertson* decision applies to the present action. On pages 380-381 the Supreme Court states: ''It is our opinion that the privilege applies to

any publication, such as the recordation of a notice of *lis pendens,* that is required (e.g., Code of Civ. Proc., § 749) or permitted (e.g., Code Civ. Proc., § 409) by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is invoked. (See 53 C.J.S., Libel and Slander, § 104, p. 168.) Thus, it is not limited to the pleadings, the oral or written evidence, to publications in open court or in briefs or affidavits. If the publication has a reasonable relation to the action and is permitted by law, the absolute privilege attaches. (See Rest., Torts, § 587; *Youmans* v. *Smith,* 153 N.Y. 214, 220 [47 N.E. 265]; *Kraushaar* v. *Lavin,* 39 N.Y.S.2d 880, 882-883; *Zirn* v. *Cullom,* 63 N.Y.S.2d 439, 440-441; *Inselberg* v. *Trosty,* 190 Misc. 507 [77 N.Y.S.2d 457, 458]; cf. 39 A.L.R.2d 840-861.) It therefore attaches to the recordation of a notice of *lis pendens,* for such a publication is permitted by law, and like other documents that may be filed in an action, it has a reasonable relation thereto and it is immaterial that it is recorded with the county recorder instead of being filed with the county clerk."

On the other hand, if this is an action for damages for malicious prosecution, it cannot succeed, irrespective of any other question involved, because the necessary prerequisites for such an action, namely, (1) favorable termination, (2) lack of probable cause and (3) malice, are lacking. There has been no favorable or other termination of *Hughes* v. *W. C. Handel and Pasadena Petroleum Corporation,* Kern County Superior Court No. 72202; that suit is still pending. As for lack of probable cause, the record supports the court's finding that Mr. Hughes acted at all times pursuant to and in accordance with the advice of his attorney. (*Albertson* v. *Raboff,* 185 Cal.App.2d 372, 385-386 [8 Cal.Rptr. 398]; *Murdock* v. *Gerth,* 65 Cal.App.2d 170, 178, 179 [150 P.2d 489]; *Masterson* v. *Pig 'N Whistle Corp.,* 161 Cal.App.2d 323, 339 [326 P.2d 918].) Malice was not proved, for respondents were attempting in good faith to recover what they had conveyed by mistake. The assignment (defendants' exhibit A) stated that defendants were the owners of an undivided 5.35 per cent of 100 per cent of all gas, oil and other hydrocarbon substances produced from the land described in the assignment, when in fact respondents only owned 2.67 per cent of 100 per cent of the oil and gas produced. The assignment specifically sets out that the respondents were selling only one-half of

their interest. Rescission on the ground of mistake is authorized by section 1689, subdivision (b), of the Civil Code: "(b) A party to a contract may rescind the contract in the following cases: (1) If the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake, . . ."

The court, with ample support in the record, found to be true the allegations of paragraph 3 of the answer: "3. . . . said Notice of Rescission, and also the subsequent proceedings in connection with civil action No. 72202 of the above entitled Court, including the recording of a Notice of Pendency of Action, were all made on account of their [*sic*] having been a mutual mistake of the parties in the sale of an overriding royalty . . . and although demand was made by defendants that said plaintiffs rectify such mutual mistake, said plaintiffs refused so to do."

Finally, the appellants seek to import into this action something that quite obviously should be taken care of, if at all, in the suit brought for the rescission of the original assignment of the overriding royalty (*Harley Hughes et al.* v. *W. C. Handel and Pasadena Petroleum Corporation et al.*, Kern County No. 72202). The instant case does not directly deal with, or purport to determine, the elements of the former suit, which has never been tried or decided; the appellants are wrong in attempting to inject into this action something which is not at issue here. Briefly, their claim is that there cannot be a rescission of a contract without a restoration to the opposing party of the consideration that he has given.

Appellants have never admitted that a rescission of the assignment ever took place; neither their pleading nor the evidence establishes such a concession; the pretrial order does not state as an issue the question whether rescission was effected; the findings do not so hold. Certainly there could be no successful action by common count for money had and received unless a rescission had actually taken place.

The question is further complicated by the fact that Pasadena Petroleum Company and Mr. Handel admittedly received a total of $5,325 from Messrs. Lake, McFadden and Thomas for a partial transfer of the oil interest for which they paid $4,250. The assignments to Lake, McFadden and Thomas were recorded before the notice of rescission, and it may be that they would be held effective even if a partial rescission as to Pasadena Petroleum Company and Handel were decreed in the suit for rescission. There are thus diverse and un-

certain elements in the situation which may well be litigated and determined in the rescission suit, but which are not at issue in the present action.

We find no error in the record; the judgment is affirmed.

Brown (R.M.), J., and Stone, J., concurred.